114 So.2d 458 (1959)
NORTH DADE WATER CO., a Florida corporation, Appellant,
v.
FLORIDA STATE TURNPIKE AUTHORITY, a body corporate and politic of the State of Florida, Appellee.
No. 59-112.
District Court of Appeal of Florida. Third District.
September 17, 1959.
Rehearing Denied October 8, 1959.
*459 Myers, Heiman & Kaplan, Miami, for appellant.
Shutts, Bowen, Simmons, Prevatt & Julian, Miami, for appellee.
CARROLL, CHAS., Judge.
This is an appeal from a judgment in eminent domain, rendered in the Circuit Court in Dade County.
The action, for acquisition of a right of way by the Florida State Turnpike Authority (referred to hereinafter as the "Authority"), resulted in a judgment granting compensation to the owners for their lands which were taken, but denying an award for the appellant North Dade Water Co. (referred to hereinafter as the "Utility Company") with whom the owners had contracted for certain utilities.
The path of the right of way traversed an area planned for subdivision. Portions thereof designated as Parcels 5, 6 and 10 were undeveloped. Parcel 4 was subdivided and largely built up, except in the portion or corner thereof which was traversed by the turnpike right of way, and the appellant had installed mains and facilities for furnishing water in that parcel.
The Authority and the Utility Company entered into an agreement with reference to relocation of the utility mains, pipes and facilities as required by the right of way taking. By § 340.07(5), Fla. Stat., F.S.A., the authority was entitled to require such relocation of utility facilities lying in the turnpike right of way, and in turn was required to compensate the Utility Company therefor.[1]
The question of such relocation costs or award was submitted to the court in a suit for declaratory decree where the amount to be paid by the Authority to the Utility Company was fixed at $35,877.60.[2]
In the instant condemnation case the trial court ruled that the Utility Company held no franchise. The court also ruled that the Utility Company held no easements for evaluation in Parcels 5, 6 and 10 in which no development had occurred; and the court directed a verdict of no award to the Utility Company as to those parcels. We find no error in the latter ruling of the trial court.
The issues on Parcel 4 went to the jury as to the value of the naked easements of the Utility Company  again under rulings of the court that the Utility Company had no franchise rights for which it could be compensated and that the easements held by the Utility Company were in gross and not appurtenant. Those rulings by the court were made the basis of assignments *460 of error, on the appeal which resulted when the jury found that the Utility Company was entitled to no award as to Parcel 4. In so deciding that issue, the jury had the benefit of testimony of the appraisers presented by the Authority who said the easements were of no value, and testimony of appraisers produced by the Utility Company who gave certain values thereto.
First, as to the Utility Company's claim that it held franchise rights extending to the lands taken for which it should have been compensated. The Utility Company had entered into certain written agreements with the private owner-developer under which the Utility Company undertook to provide water and sewer service.[3]
That contract between the private parties did not create a franchise. The exclusive right to furnish sewer and water facilities, which was given by the contract to this Utility Company, did not result in the creation of a property right for which it was entitled to draw compensation, upon condemnation of a right of way across the property to which such contract related. "Private parties cannot create a franchise. A franchise, in order to constitute a property right in the constitutional sense, must have been granted by the sovereign or its delegated agents. A contract giving one public service corporation the exclusive privilege of maintaining its works upon a certain tract of land creates no property right that the law will recognize when enforcing the exercise of eminent domain over the same land in behalf of another corporation. * * *" 2 Nichols, Eminent Domain, § 5.75[4] (3d ed. 1950). See, also, *461 Ex parte Marshall, 75 Fla. 97, 77 So. 869, L.R.A. 1918C, 944; Day v. City of St. Augustine, 104 Fla. 261, 139 So. 880; State ex rel. Watkins v. Fernandez, 106 Fla. 779, 143 So. 638, 86 A.L.R. 240; 14 Fla.Jur., Franchises, § 2 et seq.; 10 F.L.P., Franchises, §§ 2, 3; 3 Powell, Real Property, §§ 432, 433; 1 Thompson, Real Property, § 308 (2d ed. 1939). It is settled that the incidental frustration of the performance of a contract by the public taking of certain other property is not compensable. See Board of Public Instruction of Dade County v. Town of Bay Harbor Islands, Fla. 1955, 81 So.2d 637; Omnia Commercial Co. v. United States, 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773; Annotation, 152 A.L.R. 307.
Second, appellant challenges the ruling of the trial court that its easements were in gross and not appurtenant. An easement is in gross and personal to the holder when it is not appurtenant to other lands or premises. An easement is appurtenant when the right which it represents is attached to and belongs with some greater or superior right as a dominant estate. Burdine v. Sewell, 92 Fla. 375, 109 So. 648; 17-A Am.Jur., Easements, §§ 9-11; 11 Fla. Jur., Easements & Licenses, §§ 4-6.
The able trial judge was eminently correct in holding that the easements were unsupported by a dominant estate and were in gross and personal to the holder. See, Johnston v. Michigan Consolidated Gas Co., 337 Mich. 572, 60 N.W.2d 464; Joachim v. Belfus, 108 N.J. Eq. 622, 156 A. 121; Antonopulos v. Postal Telegraph Cable Co., 261 App.Div. 564, 26 N.Y.S.2d 403, affirmed 287 N.Y. 712, 39 N.E.2d 931; Miller v. Lutheran Conference & Camp Ass'n, 331 Pa. 241, 200 A. 646, 130 A.L.R. 1245; City of Richmond v. Richmond Sand & Gravel Co., 123 Va. 1, 96 S.E. 204; 17-A Am.Jur., Easements, § 11.
Other questions raised by the appellant have been considered in the light of the briefs and the record, and have been found to be without merit.
The judgment appealed from is affirmed.
Affirmed.
HORTON, C.J., and PEARSON, J., concur.
NOTES
[1] Section 340.07(5), Fla. Stat., F.S.A., provides in part as follows: "Whenever the authority shall determine that it is necessary that any such public utility facilities which now are, or hereafter may be, located in, on, along, over or under any project shall be relocated in such project, or should be removed from such project, the public utility owning or operating such facility shall relocate or remove the same in accordance with the order of the authority provided, that the cost and expense of such relocation or removal, including the cost of installing such facilities in a new location, or new locations, and the cost of any lands, or any rights or interest in lands, or any other rights acquired to accomplish such relocation or removal, shall be ascertained and paid by the authority as a part of the cost of such project, * * *."
[2] The Utility Company appealed from that decree and it was affirmed. North Dade Water Co. v. Florida State Turnpike Authority, Fla.App. 1958, 103 So.2d 137.
[3] Included in the Utility Company agreement, which appears as Exhibit BB, are the following pertinent provisions.

"1. First Party hereby grants and gives to Second Party, its successors and assigns, the exclusive right and privilege to construct, maintain and operate in, under, upon, over and across all of the streets, terraces, lanes, avenues, courts, places, alleys and the easement strips reserved for installation and maintenance of public utilities as shown in the said above described Plat, recorded in Plat Book 57 at page 8 of the Public Records of Dade County, Florida, for water and sewer service or services, the construction, operation and maintenance of water supply and sewer supply facilities (including transmission mains, distribution mains, supply pipes, collection pipes or facilities, valves, connections and all other physical facilities and property installations that are required for the construction, extension, operation and maintenance of a water supply and sewer supply facility and system) and for the purpose of supplying water service and sewer service and all service or services incidental or necessary with respect thereto, including necessary rights of ingress and egress through the property of First Party and the buildings or residences located thereon and the occupants thereof, and also to property, properties, persons, firms or corporations within or beyond the limits of the property of First Party for such period of time as Second Party, or its successors or assigns, require such rights, privileges or easements in the operation and maintenance of said water and sewer systems or system.
"2. Nothing in this agreement and the easement herein granted shall be construed to prevent First Party or its successors in interest from granting exclusive or nonexclusive rights, privileges and easements to other persons, firms and corporations, for furnishing utility service other than water service and/or sewer service.
"3. This grant and easement to Second Party for exclusive rights to supply water and sewer services to the property of First Party shall be a reservation and condition running with the land and shall be binding upon the successors and assigns of First Party and all purchasers of the property of First Party. First Party covenants and agrees that all instruments of conveyance executed by it with respect to any parcel or parcels of its property shall contain a legend that such conveyance is subject to the rights and privileges granted by this agreement to Second Party, its successors and assigns.
"4. First Party, for itself, its successors and assigns, covenants and agrees that Second Party, its successors and assigns, shall have the sole and exclusive right and privilege to provide, supply and furnish water supply service and sewer service to the property of First Party and to all buildings and residences constructed thereon and to all occupants thereof."