351 So.2d 66 (1977)
DIVISION OF ADMINISTRATION, State of Florida DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Margaret ELY et al., Appellees.
No. 76-1572.
District Court of Appeal of Florida, Third District.
October 11, 1977.
Rehearing Denied November 16, 1977.
*67 Alan E. De Serio and H. Reynolds Sampson, Tallahassee, for appellant.
John R. Farrell, Reiseman, Buchbinder & Elegant and Ira M. Elegant, Miami, for appellees.
Before PEARSON, NATHAN and HUBBART, JJ.
HUBBART, Judge.
By this appeal, we are asked to review a final judgment in an eminent domain proceeding. The condemning authority [Division of Administration, State of Florida, Department of Transportation] appeals and contends that the compensation award is improper. We agree and reverse for a new trial.
Condemnation proceedings were instituted in this cause by the Florida Department of Transportation who sought to appropriate a parcel of land in Dade County for the purpose of completing the Homestead Extension of the Florida Turnpike. The condemned parcel was part of a mobile home park owned by two people who have since been given compensation for the loss of their land. The appellee, Southeastern Propane Gas Co., had a service and easement agreement with the owners of the mobile home park to supply liquefied petroleum gas to the home trailers in the park.[1]
*68 Pursuant to this agreement, Southeastern Propane Gas Co. installed underground gas lines and other appropriate equipment for the purpose of serving the twelve trailer sites on the condemned parcel as well as the other trailer sites which were not condemned in the rest of the mobile home park. The condemnation in this case frustrates the contract to provide liquefied petroleum gas service to the twelve trailer sites on the condemned parcel. It is undisputed that Southeastern Propane Gas Co. has lost its underground gas lines and must incur a cost to remove any salvagable items on the condemned parcel. The condemnation judgment appealed from is based on a jury verdict rendered after trial. The judgment awards Southeastern Propane Gas Co. $4,157.63 as compensation for the value of the property appropriated and consequent business damages suffered as authorized under Sections 73.071(3)(a), (b), Florida Statutes (1975).[2]
The law is clear that a service and easement agreement held by a private company to provide water and sewer service to the owners of land creates no property right which is compensable upon condemnation of the land or the right-of-way on the land to which such agreement relates. Such a service and easement agreement creates an easement in gross personal to the company and not appurtenant because the easement is unsupported by another dominant *69 estate held by the company which the easement benefited. And the incidental frustration of the performance of such service and easement agreement by the condemnation of the land serviced by the agreement is equally non-compensable in an eminent domain proceeding. As to such an appropriation, the only compensation to which such private company is entitled is the value of its lost trade fixtures located on the condemned land as well as the cost of removing other trade fixtures which are salvagable from such land. North Dade Water Co. v. Florida State Turnpike Authority, 114 So.2d 458, 460-61 (Fla. 3d DCA 1959); Rose v. State, 24 N.Y.2d 80, 298 N.Y.S.2d 968, 246 N.E.2d 735 (1969); United States v. Certain Property, 344 F.2d 142, 145 (2d Cir.1965). See also Pensacola Scrap Processors, Inc. v. State Road Department, 188 So.2d 38 (Fla. 1st DCA 1966).
Damages to a business located on land appropriated in an eminent domain proceeding do not constitute part of the constitutionally protected right of just compensation for the public taking of private land and are only compensable if allowed by statute. State Road Department v. Bramlett, 189 So.2d 481 (Fla. 1966); State Road Department v. Abel Investment Co., 165 So.2d 832 (Fla. 2d DCA 1964). Where less than the entire property is sought to be appropriated, any reasonable damages to an established business located on adjoining land not appropriated are compensable by statute providing: (1) the business is owned by the party whose land is being taken, and (2) the business has been on the adjoining property for more than five years. State Road Department v. Bramlett, 189 So.2d 481 (Fla. 1966); Section 73.071(3)(b), Florida Statutes (1975).
The above rules apply with equal force to a service and easement agreement held by a private company to supply liquefied petroleum gas to the owners of land such as the service and easement agreement involved in the instant case. This agreement created solely an easement in gross personal to Southeastern Propane Gas Co. because it did not serve another dominant estate held by the company. Such easements in gross are not compensable in an eminent domain proceeding, and, consequently, Southeastern Propane Gas Co. is not entitled to compensation for the loss of a property interest in the condemned land.
Business damages under Section 73.071(3)(b), Florida Statutes (1975) are equally inapplicable in the instant case. Southeastern Propane Gas Co. did not own or have any property interest in the condemned land as required by the statute in order to qualify for business damages. Moreover, its business had not been operating on the adjoining land for more than five years as further required by the statute. The fact that Southeastern Propane Gas Co. as a company has been incorporated and doing business elsewhere throughout the state since the early 1950's does not satisfy this five year requirement under the statute.
The Florida Department of Transportation concedes, however, that Southeastern Propane Gas Co. is entitled under the above-stated principles of law to the value of its lost gas installation fixtures and the cost of removing its salvagable items of property such as meters located on the condemned parcel. We, therefore, reverse the award made in this case and remand the cause for a new trial for a determination of the such allowable compensation.
Reversed and remanded for a new trial.
NOTES
[1] The service and easement agreement contains the following pertinent provisions:

"2. That Buyer [Cove Mobile Home Park] for itself, its successors and assigns, does herewith give unto the said Seller, [Southeastern Propane Gas Co.] their heirs, successors and assigns, for the time limit hereinafter set forth, the sole and exclusive easement rights to install and maintain the complete gas system which is to be located upon the aforementioned real property:
To have and to hold the aforesaid exclusive easement rights for a period of fifteen (15) years from date of this Agreement.
3. Seller agrees to comply with all applicable State and County regulations, and agrees to comply with all safety measures required of it by such authorities.
4. Seller agrees:
(a) to install at a location or locations mutually agreeable to Seller and Buyer LP-Gas storage tanks of sufficient capacity to provide uninterrupted service to the aforementioned mobile home sites;
(b) to install underground gas lines, pipes individually to each mobile home site constructed on the aforementioned property, and connected by meter to the gas source; and
(c) to provide throughout the term of this Agreement uninterrupted LP-Gas service for each mobile home located on sites constructed on the aforementioned property and for all other liquefied petroleum gas requirements on the aforementioned property.
5. All excavating and back filling necessary for the installation of the gas distribution system, shall be performed by Seller at its expense, it being the parties intent that the piping system be located underground.
6. It is understood and agreed by and between the parties hereto that a Fifteen (15.00) Dollar meter deposit and a Five (5.00) Dollar turn on and connect charge will be placed with and paid to Seller by the mobile home occupant upon request of service. Buyer agrees that Seller may charge the mobile home occupant a minimum charge of Three Dollars and Fifty ($3.50) cents per month or any part of a month when gas service is turned on and, in the event of temporary turnoffs, Seller will charge the mobile home occupant Seven Dollars and Fifty ($7.50) cents service charge to discontinue service and Seven Dollars and Fifty ($7.50) cents service charge to restore service. No final-off charge will be made to trailer occupants upon termination of service due to occupant moving out of trailer park. Buyer agrees that it will pay to Seller the sum of Two Dollars and Fifty ($2.50) cents per month on any occupied mobile home site where gas service is not in use and the occupant is not paying the aforementioned Three Dollars and Fifty ($3.50) cents monthly minimum bill. It is understood by both parties that this Two Dollar and Fifty ($2.50) cents per month charge will be paid by Buyer until such time that the subject mobile home site is occupied by a gas using resident. Seller agrees that the aforementioned Two Dollars and Fifty ($2.50) cents per month charge as specified in this paragraph will not be effective until six (6) months after first gas service is turned on. Seller agrees that the price of LP-Gas will be competitive to and will not exceed prevailing prices charged in the area for analogous and comparable installations.
7. In the event any one individual mobile home account fails to use a minimum of one hundred and twenty five gallons of gas in any one calendar year Buyer agrees that Seller may bill said mobile home occupant for the difference between his actual consumption and the one hundred and twenty five gallons annual minimum.
8. It is further understood and agreed by the parties hereto that Seller will supply any and all other liquefied petroleum gas requirements on the aforementioned property for the terms of this Agreement.
9. It is further understood and agreed by the parties hereto that all underground piping and equipment installed by Seller upon the real property described hereinabove shall remain the sole property of Seller for the term of this Agreement, and at the termination of this Agreement, the underground gas lines will become the property of the Buyer.
10. Seller's responsibility as outlined in this Agreement is contingent upon Federal and State laws and regulations, fires, strikes, disputes with workmen, floods, hurricanes, accidents, delays in transportation and any other causes beyond reasonable control of the Seller.
11. This Agreement shall bind and benefit the successors and grantees to Seller and Buyer, respectively, it being the intent of this Agreement that Buyer's covenants hereunder shall run with the land. * * * *"
[2] "The jury shall determine solely the amount of compensation to be paid, which compensation shall include:

(a) The value of the property sought to be appropriated; and
(b) Where less than the entire property is sought to be appropriated, any damages to the remainder caused by the taking, including when the action is by the Division of Road Operations of the Department of Transportation, county, municipality, board, district or other public body for the condemnation of a right-of-way, and the effect of the taking of the property involved may damage or destroy an established business of more than 5 years' standing, owned by the party whose lands are being so taken, located upon adjoining lands owned or held by such party, the probable damages to such business which the denial of the use of the property so taken may reasonably cause; any person claiming the right to recover such special damages shall set forth in his written defenses the nature and extent of such damages." Sections 73.071(3)(a), (b), Florida Statutes (1975).