414 So.2d 193 (1982)
Paul Mark RYAN, etc., Petitioner,
v.
TOWN OF MANALAPAN, etc., et al., Respondents.
No. 60335.
Supreme Court of Florida.
May 6, 1982.
*194 C. Robert Burns of Steel, Hector, Davis, Burns & Middleton, Palm Beach, for petitioner.
James McC. Wearn of the Law Offices of James McCartney Wearn, West Palm Beach, and Charles F. Schoech, County Atty. and Clifford I. Hertz, Asst. County Atty., West Palm Beach, for respondents.
BOYD, Justice.
This cause is before the Court on petition for review of a decision of a district court of appeal, Ryan v. Town of Manalapan, 393 So.2d 633 (Fla. 4th DCA 1981). The district court of appeal certified that its decision passed upon a question of great public importance. Therefore we have jurisdiction to entertain the petition for review. Art. V, § 3(b)(4), Fla. Const. We approve the decision of the district court of appeal.
Petitioner Paul Mark Ryan is the owner, as trustee, of several contiguous oceanfront lots bounded by the Atlantic Ocean to the east and Lake Worth to the west. The strip of land comprises 1044 feet of ocean frontage. Immediately to the north of Ryan's lots is respondent Roy Talmo's lot with the same east and west boundaries and 300 feet of ocean frontage. The deed to petitioner's property contains restrictive covenants limiting the use of the land to single-family dwellings constructed on lots with a minimum of 150 feet of ocean frontage and extending westerly to the lake. After these covenants were established, the lot now owned by Talmo was conveyed subject to the same restrictions.[*]
The Town of Manalapan has a comprehensive zoning plan, and its regulations impose the same restrictions on the land in question as are imposed by the covenants. However, in May, 1978, Roy Talmo, Palm Beach County, and the Town of Manalapan entered into a written agreement which contemplates allowing Talmo to proceed with a development plan for his lot. The agreement provides that the County would relinquish "dedicatory rights" to part of Talmo's lot in exchange for the sum of $70,000, half to be paid by Talmo and half by the Town; Talmo would grant the County a ten-foot-wide easement at the north line of his lot for pedestrian access to the ocean; the Town would re-zone Talmo's lot to permit the eastern half of the north 230 feet to be used for multi-unit housing and the south 70 feet to be used for a single-unit dwelling with 70 feet of ocean frontage; and Talmo would grant the western half of the north 230 feet of his lot to the Town to be used for a town hall, fire or police station, or other municipal use.
Petitioner Ryan brought this declaratory judgment action to obtain a judicial determination of the effect of this agreement on his rights with relation to Talmo, the Town, and the County. He asserted that the land that is the subject of the agreement is encumbered by restrictive covenants and that if the agreement is put into effect the covenants would be violated in various ways. The covenants would be violated, he alleged, by the use of the north 10 feet of *195 the lot for pedestrian access rather than as part of a single-family residential lot; by the use of the eastern half of the north 230 feet of the lot for multi-unit housing rather than for single-unit residential lots with a minimum of 150 feet of frontage and extending from ocean to lake; by the use of the south 70 feet of the lot without observing the 150-foot minimum frontage requirement; and by the use of the western portion of the north 230 feet of the lot for municipal purposes.
The defendants moved to dismiss the complaint arguing that Talmo's lot is not subject to the restrictive covenants referred to in the complaint. The Town and the County moved for dismissal as to them on the ground that restrictive covenants in deeds are not enforceable against governmental bodies that acquire land for public purposes. The trial court granted the motions to dismiss of the Town and the County, and petitioner appealed.
On appeal, the district court affirmed and certified the question, saying the following:
As stated earlier in this opinion, the sole issue before us is whether a public body which acquires an interest in lands by means other than eminent domain is bound by private restrictions governing the use of the land. Although Board of Public Instruction v. Town of Bay Harbor I., supra [81 So.2d 637 (Fla. 1955)] involved land acquired by eminent domain, we see no distinction when the land is acquired by agreement or purchase. In either case the restrictive covenants do not "constitute property in those in whose favor such restrictions exist for which compensation must be made... ." Id. at 639, and thus, the covenants are not enforceable against the public body. Accordingly, the trial court correctly dismissed the suit as to the public bodies and his orders should be affirmed.
Nevertheless, we consider the difference between acquisition by eminent domain and acquisition by agreement or purchase to warrant consideration of this question by the Supreme Court, and we therefore certify to the Supreme Court the following question as one of great public importance:
DO RESTRICTIVE COVENANTS AFFECTING THE USAGE OF LAND APPLY TO A PUBLIC BODY WHICH ACQUIRES THE LAND BY PURCHASE AS OPPOSED TO ACQUISITION BY EMINENT DOMAIN?
393 So.2d at 635.
The district court was incorrect in saying that the case of Board of Public Instruction v. Town of Bay Harbor Island, 81 So.2d 637 (Fla. 1955), involved land acquired by eminent domain, although the Court there did discuss eminent domain at length. The case was an appeal from a trial court decree (1) requiring a school district to perform a contract to purchase land and (2) permanently enjoining it from building a school on the land in violation of plat restrictions allowing only for residential use. The appeal did not concern the decree for specific performance but only the question of whether the school district could be enjoined from building the school. The Court concluded that this question consisted of two component issues: (1) whether the subdivision restrictions could be enforced against the school district and (2) whether, if the land were used for a school, the school district would be required to compensate the beneficiaries of the restrictions for the loss in value of their property.
The Court focused its discussion on the second issue, finding that a negative answer would require that the first question also be answered in the negative. The analysis of eminent domain was utilized as follows. The Court reasoned that if a public body may acquire land for public purposes by eminent domain without being required to financially compensate the benefitted neighbors for violation of the restrictions, then it follows that when a public body acquires such burdened land by purchase, the restrictions are not enforceable against the public body.
The Court found there was a split of authority among the jurisdictions on the question of the enforceability of restrictive covenants against public bodies taking land *196 for public use. The Court concluded that the better view was that restrictive covenants are not interests in real property, as are easements, but are mere contractual rights, not compensable when destroyed by exercise of the power of eminent domain. All property owners are charged with notice, the Court reasoned, of the fact that property is held subject to the power of eminent domain. Said the Court, "Were we to recognize a right of compensation in such instances, it would place upon the public an intolerable burden wholly out of proportion to any conceivable benefits to those who might be entitled to compensation." Id. at 643 (footnote omitted). From this answer to the second question the Court concluded that the plat restrictions could not be enforced against the school district acquiring the land by purchase.
With an accurate understanding of the Bay Harbor Island case, it can be seen that the district court's certified question was answered twenty-seven years ago: restrictive covenants are no more enforceable against a governmental body when it acquires land for public purposes by purchase than they are when it does so by eminent domain.
Petitioner argues that this case should not come within the rule that restrictive covenants are unenforceable against governmental bodies and points to the prominent role of private developer Talmo in the proposed nonconforming plan of development. Petitioner relies upon Thompson v. Squibb, 183 So.2d 30 (Fla. 2d DCA 1966). There, the principle of Bay Harbor Island was invoked as a defense to an action for enforcement of a restrictive covenant. Plaintiffs there were the developers of a subdivision which they platted on land they owned. They subjected the land to restrictions allowing residential use only, constructed roads and sold lots. They still owned some of the lots at the time of the lawsuit. The defendant was the purchaser of one of the lots. She was also involved, along with others, in the development of an adjacent subdivision. The defendant cleared a strip of her lot and built a short road across it, creating a way of access connecting the roads in the two subdivisions. The plaintiffs sought and obtained an injunction against the use of the land as a road.
On appeal, the district court first concluded that use of the land as a road was in violation of the restriction. The appellant argued that she could put her land to public-road use in violation of the restriction without giving rise to any right in the neighboring owners to enjoin such use because the benefits of such restrictions are not property rights. She invoked the rule that property subject to restrictive covenants may be taken by eminent domain for public use inconsistent with the covenants. She pointed out to the court that under the law of Florida, such covenants create no property rights in the beneficiaries for which compensation must be paid when the land is taken for public uses which conflict with the restrictions. She argued that since such land may be taken by eminent domain "without liability of the taker to owners of other land for whose benefit the covenants are made, then the owner of such restricted land may make a voluntary conveyance or dedication of the land for a public use, such as a road or highway, without liability for breach of the covenants." 183 So.2d at 33. The district court of appeal responded:
We cannot follow this rationale. In the Bay Harbor case, cited last, supra, the Supreme Court observed that restrictions on use of land embodied in covenants running with the land convey no interest in the land, are not true easements, "and at best may be relied upon and enforced between the parties thereto and their successors with notice." We do not perceive that it was the purpose of the Court in that case to eliminate or weaken the obligations of such covenants as between private parties to the covenants and those in privity with them. There is not involved here an assertion by any public body of a right in the property involved. This is a controversy wholly between private parties. The Court, in the Bay Harbor case, pointed out that the Constitution and laws of this state are a part of every *197 contract and that every person is charged with knowledge that any land may be taken by the sovereign for public purposes at any time. However, it would not necessarily follow that a landowner may voluntarily and without at least some substantial prospect that some public authority will exercise the power of eminent domain convey or dedicate his property for a use, public or private, which would violate his covenants.
There is not present in this case a circumstance of the defendant being confronted with the imminence of condemnation proceedings to acquire the portion of the lot involved for a public street or road. On the contrary, the motives for her actions were primarily for her private benefit and that of the adjoining subdivision in which she held an interest. We do not find that there are circumstances in this case which would interfere with the right of the plaintiffs to seek and obtain recognition and enforcement of the covenant involved. The injunctive relief granted appears to have been appropriate under the circumstances to bring about a discontinuance of the violation of the covenants and to assure that the land would not be put to the prohibited use in the future.
Thompson v. Squibb, 183 So.2d 30, 33-34 (Fla. 2d DCA 1966).
The petitioner's reliance on Thompson is to no avail. As was noted by the court there, the purported "dedication" of land to a public use was completely unilateral. There was no acceptance of the land as a public right of way by any governmental body. There was no governmental participation whatsoever. Here, on the other hand, regardless of whether the arrangement can be regarded as involving a purchase, there is by virtue of the agreement an acquisition of property by a local government for public purposes. It matters not that the proposal for public use may have originated with the private owner's plan of development.
We therefore conclude that the decision of the district court to affirm the dismissal of the County and the Town from the lawsuit was correct in result. We offer no opinion, however, on any questions pertaining to the legal rights and duties of the remaining parties, since no such questions are presented by the petition for review.
The decision under review is approved.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[*] Talmo's answer to the complaint questioned the applicability of the restrictions to his land. But we must assume their applicability for purposes of our review of the district court's decision.