758 So.2d 1209 (2000)
ALTERNATIVE NETWORKING, INC., Appellant,
v.
SOLID WASTE AUTHORITY OF PALM BEACH COUNTY and J.J. Taylor Companies, Inc., Appellees.
Nos. 4D99-2620, 4D99-2728.
District Court of Appeal of Florida, Fourth District.
May 17, 2000.
*1210 Thomas R. Bolf of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, and David L. Wills of David L. Wills, P.A., Fort Lauderdale, for appellant.
Paul R. Golis of Paul R. Golis, P.A., Boca Raton, for Appellee-Solid Waste Authority of Palm Beach County.
Elaine Johnson James of Nason, Yeager, Gerson, White & Lioce, P.A., West Palm Beach, for Appellee-J. J. Taylor Companies, Inc.
GUNTHER, J.
This case involves two consolidated appeals arising from eminent domain proceedings. The Appellant in case no. 99-2620, Alternative Networking, Inc. ("ANI"), appeals entry of summary judgment entered in favor of the Appellee, the Solid Waste Authority ("SWA"). We affirm the summary judgment, which determined ANI did not have a property interest compensable in eminent domain. In addition, the Appellant in case no. 99-2728, J.J. Taylor Companies, Inc. ("J.J.Taylor"), appeals an order entered in favor of ANI and apportioning J.J. Taylor's condemnation proceeds. We reverse the order of apportionment.
J.J. Taylor owned a tower located on land that it leased from the City of West Palm Beach. J.J. Taylor had twelve tenants on the tower, three of which leased space on the tower as a result of a contract entered into between J.J. Taylor and ANI in 1990. Pursuant to the contract, J.J. Taylor agreed to pay ANI 15% of the monthly rents attributable to the tenants ANI procured for as long as the tenants remained on the tower. In addition, the contract contained the following provision: "This fee shall survive contract renewals and or transfer of ownership and remain in full as long as the tenant remains on the tower."
In 1993, SWA initiated eminent domain proceedings to take the tower. ANI was not named in the petition as an interested party. J.J. Taylor and SWA entered into a stipulated final judgment and a stipulated order of taking. The stipulated final judgment provided that SWA would pay to J.J. Taylor the sum of $1,010,000 for the taking and that said sum "shall not be apportioned, and no other parties shall have any rights with respect to the amount to be paid to JJT by this Stipulated Final Judgment." In addition to the $1,010,000, SWA deposited an extra $100,000 into the court registry to secure the rights of the twelve tenants on J.J. Taylor's tower. After final judgments had been entered with respect to the twelve tenants and after the tower had been dismantled, ANI filed a motion to intervene in the eminent domain proceedings and a motion to apportion J.J. Taylor's condemnation proceeds.
After granting the motion to intervene, the trial court entered summary judgment in favor of SWA, finding that the contract between J.J. Taylor and ANI was a personal contract as opposed to a covenant running with the land and concluding that the contract did not create a property interest compensable in eminent domain and that the mere frustration of the contract was noncompensable. We agree and affirm the summary judgment. Despite the trial court's conclusion that ANI did not have a property interest, the court granted ANI's motion to apportion J.J. Taylor's condemnation proceeds. On this point, we reverse. For the following reasons, we hold the contract between J.J. Taylor and ANI was a personal contract, the mere incidental frustration of which is not a property interest compensable in eminent domain.
Covenants running with the land, sometimes called real covenants, have been distinguished *1211 from personal covenants as follows,
"A personal covenant creates a personal obligation or right enforceable at law only between the original covenanting parties whereas a real covenant creates a servitude upon reality for the benefit of another parcel of land. A real covenant binds the heirs and assigns of the original covenantor, while a personal covenant does not." A covenant running with the land differs from a merely personal covenant in that the former concerns the property conveyed and the occupation and enjoyment thereof, whereas the latter covenant is collateral or is not immediately concerned with the property granted. If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land.
Palm Beach County v. Cove Club Investors, Ltd., 734 So.2d 379, 382 n. 4 (Fla. 1999) (quoting 19 Fla. Jur.2d Deeds § 174 (1998) and Maule Indus., Inc. v. Sheffield Steel Prods., Inc., 105 So.2d 798, 801 (Fla. 3d DCA 1958)).
Here, the contract between ANI and J.J. Taylor does not benefit another parcel of land. In addition, it does not necessarily bind the heirs and assigns of J.J. Taylor. Although the contract contains language indicating the agreement to pay rents would survive transfers of ownership, the contract also provides that J.J. Taylor was to pay ANI for only as long as the tenants it found remained on the tower. If the tenants were no longer on the tower, J.J. Taylor had no obligation to pay ANI. The leases between the tenants and J.J. Taylor provided that the lessee could terminate the lease upon three months notice. In addition, the contract did not contain any method of enforcing payment to ANI, such as a lien right. Therefore, the contract would not necessarily bind J.J. Taylor's heirs and assigns. Because the contract did not benefit another parcel of land and did not, for all intents and purposes, bind J.J. Taylor's heirs and assigns, the contract was not one running with the land, but rather a personal contract between J.J. Taylor and ANI.
Based on the foregoing, we distinguish the present case from Cove Club, which involved a recorded covenant running with the land. See Cove Club, 734 So.2d at 379. In Cove Club, the Florida Supreme Court held that a country club's right to receive monthly recreation fees paid by lot owners was a property interest. See id. at 380-90. Lot owners of a mobile home community were required to pay a monthly recreation fee to the country club for maintenance of the club's facilities, regardless of whether the lot owners used the facilities. See id. at 380-81. This requirement was a recorded covenant running with the land. See id. When Palm Beach County took a lot located within the mobile home community, the country club sued, asserting a property right in the monthly recreation fees. See id. at 380-82. Although noting that not all covenants are compensable, the court held that
under the factual circumstances presented herein a covenant running with the land and requiring individual lot owners in a mobile home residence to pay monthly recreation fees for the use and enjoyment of an adjoining country club constitutes a compensable property right in favor of the country club upon the condemnation of the mobile home lot by the government.
Id. at 380, 390. In addition, the court distinguished Cove Club from cases involving service contracts, the mere frustration of which did not amount to a property interest. See id. at 387-90. The court concluded that, unlike the service contract cases, the country club's obligations to maintain the facilities were not frustrated because it still had to maintain the facilities, despite losing the benefit of its bargain *1212 in that the recreation fee base was diminished by the taking. See id.
The present case, however, falls best within the realms of the service contract cases. In Division of Administration v. Ely, 351 So.2d 66 (Fla. 3d DCA 1977), a utility company had a service and easement agreement with the owners of a mobile home community to provide gas to mobile home owners. See id. at 67-68. The DOT condemned twelve mobile home sites that were serviced by the utility company. See id. The Third District held the service and easement agreement between the utility company and the owners of the mobile home community was personal and that the mere frustration of the performance of the agreement was noncompensable in an eminent domain proceeding. See id. at 68-69. The same result was reached in North Dade Water Co. v. Florida State Turnpike Authority, 114 So.2d 458 (Fla. 3d DCA 1959), based on similar facts. See id. at 460-61 (concluding "a contract giving one public service corporation the exclusive privilege of maintaining its works upon a certain tract of land creates no property right that the law will recognize when enforcing the exercise of eminent domain over the same land in behalf of another corporation" and stating "the incidental frustration of the performance of a contract by the public taking of certain other property is noncompensable").
Likewise, the taking of the tower in the present case amounted to an incidental frustration of the performance of the contract. Although ANI argues that it had fully performed under the contract, it is important to note that the contract required the tenants to remain on the tower in order for ANI to be paid. ANI was to receive nothing if the tenants did not remain on the tower. We hold that ANI did not have an interest in property compensable in eminent domain and affirm the summary judgment. Because ANI did not have such a property interest, it was error to apportion J.J. Taylor's condemnation award. Accordingly, we reverse with respect to the order granting apportionment and remand.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
WARNER, C.J., and STEVENSON, J., concur.