DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MIGUEL VAZQUEZ,**
Appellant,

v.

**CITY OF HALLANDALE BEACH, FLORIDA,**
Appellee.

No. 4D2023-0833

[June 12, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michele Towbin Singer, Judge; L.T. Case No. CACE2207138.

Jordan A. Shaw, Zachary D. Ludens and Lauren N. Palen of Zebersky Payne Shaw Lewenz, LLP, Fort Lauderdale, for appellant.

Jennifer Merino, City Attorney, City of Hallandale Beach, Hallandale Beach, for appellee.

PER CURIAM.

*Affirmed. See Bd. of Pub. Instruction v. Town of Bay Harbor Island*, 81 So. 2d 637, 642 (Fla. 1955) (stating that restrictive covenants "do not vest in the owners of other lands in the subdivision a property right for which compensation must be made in the event said lands are taken for and devoted to a public use"); *Ryan v. Town of Manalapan*, 414 So. 2d 193, 196 (Fla. 1982) (holding that, unlike easements, restrictive covenants (1) are not interests in real property "compensable when destroyed by exercise of the power of eminent domain" and (2) are also not "enforceable against a governmental body when it acquires land for public purposes by purchase").

KUNTZ, J., concurs.
KLINGENSMITH, C.J., concurs specially with opinion.
GROSS, J., concurs specially with opinion.

KLINGENSMITH, C.J., concurring specially.

I concur in the majority's opinion affirming the trial court's order dismissing this case, although reluctantly.

Appellant filed a class action seeking an injunction against appellee City of Hallandale Beach claiming that the City's marina and parking lot violated a "buffer zone" created by a restrictive covenant that the City itself agreed to in a 1969 settlement of a lawsuit to which it was a party. The City admits that building the marina on the property violated that restrictive covenant. Fast forward to 2024, when the City now argues, despite making this agreement as part of a deal to resolve that lawsuit, the City is not bound by this restrictive covenant, or any other restrictive covenants, because such covenants are contractual rights, not property rights, which are not enforceable against governments.

In support of its claim, the City relies primarily on two cases from the Florida Supreme Court—*Ryan v. Town of Manalapan*, 414 So. 2d 193 (Fla. 1982), and *Board of Public Instruction of Dade County v. Town of Bay Harbor Islands*, 81 So. 2d 637 (Fla. 1955). Those cases hold that restrictive covenants resulting from agreements by third parties can be extinguished either by eminent domain or by a governmental entity's purchase of the land for a public use. *Ryan*, 81 So. 2d at 195-96; *Bay Harbor*, 81 So. 2d at 642. In short, under Florida Supreme Court precedent, restrictive covenants do not run with the land to encumber a governmental entity's use of that property. Sound legal reasons support those holdings, which also apply to restrictive covenants created by agreements in which the governmental entity *was not* a party, and I take no issue with them.

In *Bay Harbor*, the Court said, "such restrictions do not vest in the owners of other lands in the subdivision a property right for which compensation must be made in the event said lands are taken for and devoted to a public use even though such use is inconsistent with the use to which said lands are restricted by private agreement." *Bay Harbor*, 81 So. 2d at 642 (construing *Anderson v. Lynch*, 188 Ga. 154, 3 S.E.2d 85 (1939)). When referencing the government's power of eminent domain, the Court said:

> **While [] owners may so contract as to control private business, and thereby increase the values of their estates, they are not entitled so to contract as to control the action of the government** . . . .
>
> * * * Each landowner holds his estate subject to the public necessity for the exercise of the right of eminent domain for public purposes. **He cannot evade this by any agreement**

**with his neighbor, nor can his neighbor acquire a right from a private individual which imposes a new burden upon the public in the exercise of the right of eminent domain**.

*Id.* at 642–43 (third alteration in original) (emphasis added) (quoting *United States v. Certain Lands in Town of Jamestown, R.I.,* 112 F. 622, 629 (C.C.D.R.I. 1899)). *Ryan* reaffirmed the holding in *Bay Harbor* by stating that "**restrictive covenants are not interests in real property**, as are easements, but are **mere contractual rights**, **not compensable when destroyed by exercise of the power of eminent domain**." *Ryan*, 414 So. 2d at 196 (emphasis added).

What distinguishes this case from *Ryan* and *Bay Harbor* is that the restrictive covenants in those cases were created by third parties, and those municipalities were not parties to the original agreements. Here, the City *was* a party to the original settlement agreement that created the restrictive covenant.

Phrased differently—in contrast to *Bay Harbor* and *Ryan*—the City did not simply acquire land with an existing restrictive covenant attached to the land. Rather, *the City created the same restrictive covenant that it now seeks to destroy.* Thus, the fact that the City did not own the property in question at the time of the 1969 settlement is irrelevant.

The City also argues that even though it was a party to the 1969 agreement which created the restrictive covenant, and despite the City being involved in a 2012 declaratory judgment action to enforce the restrictive covenant, the City itself was not—*nor was it ever*—bound by that restrictive covenant. Indeed, the City claims it was free to violate the restrictive covenant at will and has no obligation whatsoever pursuant to *Bay Harbor* and *Ryan* to use the power of eminent domain to extinguish the restrictive covenant. In my opinion, this is the very definition of an illusory contract. Despite the City's assertions that the contract is not illusory, the City has wholly failed to explain under these circumstances why it is not. *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984) (a contract is illusory if it is not mutually enforceable).

Nonetheless, I am constrained by the language contained in the *Bay Harbor* and *Ryan* opinions stating that restrictive covenants, such as building restrictions, do not constitute compensable property rights because they are not true easements and do not convey an interest in land which is enforceable against a municipality upon its purchase. *Bay Harbor*, 81 So. 2d at 642; *Ryan*, 414 So. 2d at 196. But in my view, both

private and public parties should be held to the agreements which they freely enter. While a covenant may not have value when a municipal entity acquires property with one attached pursuant to a third-party agreement, I think such restrictions have compensable value in those cases where the entity itself was a party to the restrictions' creation. If the City wants to extricate itself from an obligation to recognize a valuable right which the City had created by its settlement agreement, and not through legislative actions like zoning, the City should be compelled to use the eminent domain process instead of getting a free pass for blatantly ignoring such process.

However, only the Florida Supreme Court can decide whether it intended to create such a broad exemption that effectively immunizes the City from the consequences of breaching its own restrictive covenant, which the City unabashedly admits it has done. But for the language contained in *Bay Harbor* and *Ryan* cited above, I would reverse.

GROSS, J., concurring specially.

To the Chief Judge's concurring opinion, I would add several points.

Appellant relies on the settlement agreement of a 1969 lawsuit. The agreement and our record do not reflect the nature of the City's participation in that litigation leading up to that agreement. The City was not the owner of the property impacted by the 1969 settlement. The City may have been drawn into that lawsuit in its permitting or other regulatory capacity.

The 1969 agreement does not contain a clear and express waiver by the City of its sovereign immunity. The sovereign has the power to avoid a restrictive covenant for the public benefit. *See Bd. of Pub. Instruction v. Town of Bay Harbor Island*, 81 So. 2d 637 (Fla. 1955); *Ryan v. Town of Manalapan*, 414 So. 2d 193 (Fla. 1982). Thus, for the City to give up this ability, the law requires an explicit waiver.

"In Florida, sovereign immunity is the rule, rather than the exception, as evidenced by article X, section 13 of the Florida Constitution: 'Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.'" *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984). "In section 768.28, Florida Statutes [], the legislature has explicitly waived sovereign immunity in tort. There is no analogous waiver in contract." *Id.* However, municipalities have "both the authority to contract and liability for breaching" a contract.

4

*Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 463 (Fla. 2005).

The waiver of sovereign immunity for contract claims pertains "only to suits on express, written contracts." *Pan-Am*, 471 So. 2d at 6. Furthermore, "any waiver of sovereign immunity must be clear and unequivocal." *Am. Home Assurance Co.*, 908 So. 2d at 472 (citing *Manatee Cnty. v. Town of Longboat Key*, 365 So. 2d 143, 147 (Fla. 1978) and *Rabideau v. State,* 409 So. 2d 1045, 1046 (Fla. 1982)); *see also Seminole Tribe of Fla. v. Schinneller*, 197 So. 3d 1216, 1220 (Fla. 4th DCA 2016) ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed.") (internal quotation marks omitted) (citation omitted). "[W]aiver will not be found as a product of inference or implication." *Am. Home Assurance Co.*, 908 So. 2d at 472 (citing *Spangler v. Fla. State Tpk. Auth.*, 106 So. 2d 421, 424 (Fla. 1958)).

*       *       *

***Not final until disposition of timely filed motion for rehearing.***