183 So.2d 30 (1966)
Evelyn THOMPSON, Appellant,
v.
Charlie SQUIBB et Ux. et al., Appellees.
No. 5410.
District Court of Appeal of Florida. Second District.
January 21, 1966.
Rehearing Denied February 22, 1966.
*31 Maguire, Voorhis & Wells, Orlando, for appellant.
W.B. Hunter, Tavares, and Walter Warren, Leesburg, for appellees.
WILLIS, BEN C., Associate Judge.
The plaintiffs in the trial court, Mr. and Mrs. Squibb, sought and obtained a final permanent injunction decree against the defendant, Mrs. Thompson, whereby the latter, "her agents and employees", are restrained from "using or attempting to use as a drive or street for the purpose of ingress or egress to or from the property platted as Mobile Home Estates * * * from or to the property platted as Thompson Estates * * * over or across that portion of Lot 88 of said Mobile Home Estates owned by the defendant, Evelyn Thompson, and being the southwesterly portion of Lott 88 adjacent to the circle at the eastern end of Southshore Drive of Mobile Home Estates, except as a pedestrian."
It was further provided by way of a mandatory injunction that Mrs. Thompson remove from her portion of Lot 88 any and all paving surfaces, either clay or other paving material, which has heretofore been placed on and across said lot by either herself or her late husband, W.H. Thompson, or their agents or employees, for the purpose of connecting the streets in the subdivision of Thompson Estates with the circle at the end of Southshore Drive in Mobile Home Estates. As an alternative to these mandatory provisions it was ordered that should Mrs. Thompson fail to remove the paving surface on the lot within 10 days of the date of the order, the plaintiffs shall have the right "to place concrete or other curbing within the boundaries of the circle" on Southshore Drive adjacent to the defendant's portion of Lot 88 "for the purpose of preventing and prohibiting ingress or egress by vehicle of any nature to or from the said Mobile Home Estates by way of said traffic circle to or from said Thompson Estates."
The defendant Evelyn Thompson has appealed from said final decree.
The pertinent facts are as follows. In 1957, the plaintiffs Squibb and others acquired certain real property in Lake County which was thereafter platted into a subdivision known as Mobile Home Estates. Certain restrictions applicable to the land in the subdivision were made a matter of record in March, 1958, among which is the following:
"All land included in Mobile Homes Estates shall be used for residential purposes only, except such lots, blocks or parcels as may be hereafter designated for other purposes by the Committee."
By August 6, 1959 the Squibbs acquired the interests of their associates and became the sole owners of Mobile Home Estates. It was improved with the grading, installation and paving of streets, installation of a water system and construction of a club house. A number of lots were sold and mobile homes and other structures have been erected on these lots. The plaintiffs still own a number of the lots.
In April, 1960, the Squibbs, the defendant Mrs. Thompson and her late husband, *32 and a Mr. and Mrs. Rawling acquired property adjacent to Mobile Home Estates on the south. The Thompsons purchased the interests of the Squibbs and Rawlings and in May, 1961 were the sole owners of this property, a portion of which, in June, 1961, was platted into a subdivision known as Thompson Estates. It lies immediately adjacent to the south portion of Mobile Home Estates.
The Thompsons also acquired title to the southwesterly 30 feet of Lot 88 of Mobile Home Estates, which lot lies at the eastern end of Southshore Drive of Mobile Home Estates. This portion of Lot 88 is also adjacent to a platted street or roadway in Thompson Estates and affords a physical connection between the streets of the two subdivisions.
In December, 1961 some clay was deposited on the southwesterly 30 feet of said Lot 88 and this area has been used from time to time as a means of access by vehicle and foot traffic from the streets of Mobile Home Estates to the streets of Thompson Estates.
This suit was instituted shortly thereafter. The defendant W.H. Thompson died prior to final hearing and was dismissed as a party. The defendant Evelyn Thompson acquired the interest of her husband, apparently as the surviving spouse of an estate by the entirety.
Affirmative defenses and a counterclaim were asserted and various motions were made and ruled upon with the cause culminating in the entry in July, 1964 of the modified final decree appealed from.
The appellants have raised several points but only one needs to be discussed to reach a proper disposition of this appeal. The other issues involve claims of "unclean hands," estoppel and absence of irreparable injury to warrant injunctive relief. Each of these points have been carefully considered, and we deem the chancellor acted well within the bounds of allowable discretion in his rulings on those matters.
The critical question may be stated as:
Is a covenant running with the land that all land included in a named platted subdivision "shall be used for residential purposes only" violated by an owner voluntarily constructing a street right of way across part of a lot of the subdivision to serve as a connecting roadway between a street of the subdivision with that of another subdivision?
In construing restrictive covenants the question is primarily one of intention, and the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by a fair interpretation of the entire text of the covenant. See Annotation 25 A.L.R.2d p. 905; 14 Am.Jur., Covenants, etc., Sec. 211. See also Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A.L.R. 1127.
There is no ambiguity in the expression "shall be used for residential purposes only." As employed in this covenant, the word "only" is synonymous with the word "solely" and is the equivalent of the phrase "and nothing else." Moore v. Stevens, supra. Property restricted to use for residential purposes, so long as it is in good faith used for such, may be also used to a minor extent for the transaction of some classes of business or other pursuits so long as such is merely casual or unobtrusive and results in no appreciable damage to neighboring property nor inconvenience, annoyance or discomfort to neighboring residents. However, such additional use must be reasonably incidental to residential uses and such an inconsequential breach of the covenant as to be in substantial harmony with the purpose of the parties in making the covenants, and without substantial injury to the neighborhood. Moore v. Stevens, supra.
It is obvious that the use of defendant's lot as a connecting street so that there would be access from the streets of *33 the adjoining subdivision to those of the subdivision for whose benefit the restrictive covenants were made is not in any sense a residential use or a use incidental thereto.
The particular covenant standing alone is sufficient to compel the conclusion that the defendant's use of this lot violates its terms. However, this view is further strengthened by a consideration of another portion of the covenants, which provides that a certain designated supervising committee proposes to maintain the streets of the subdivision and all lots shown on the plat shall be subject to a monthly charge for this purpose and for certain other public facilities.
This would show an intent to not enlarge the exposure of the streets to more traffic, and consequently the need for more maintenance, than the layout of the plat and its connections would produce. The defendant's roadway or drive across the property in no way facilitates the permitted residential use to which the property is restricted.
The appellant points out that property subject to restrictive covenants as to use may be taken for a public purpose in eminent domain proceedings even though such use would violate the covenants. It is also shown that it is the law of this state that such covenants create no property rights in the beneficiaries of such covenants for which compensation must be paid when land subject to such covenants is acquired for a public use which conflicts with the restrictive covenants. Board of Public Instruction of Dade County v. Town of Bay Harbor, Fla. 1955, 81 So.2d 637. It is thus reasoned that since land burdened with such restrictive covenants may be taken from its owner through eminent domain without liability of the taker to owners of other land for whose benefit the covenants are made, then the owner of such restricted land may make a voluntary conveyance or dedication of the land for a public use, such as a road or highway, without liability for breach of the covenants.
We cannot follow this rationale. In the Bay Harbor case, cited last, supra, the Supreme Court observed that restrictions on use of land embodied in covenants running with the land convey no interest in the land, are not true easements, "and at best may be relied upon and enforced between the parties thereto and their successors with notice." We do not perceive that it was the purpose of the Court in that case to eliminate or weaken the obligations of such covenants as between private parties to the covenants and those in privity with them. There is not involved here an assertion by any public body of a right in the property involved. This is a controversy wholly between private parties. The Court, in the Bay Harbor case, pointed out that the Constitution and laws of this state are a part of every contract and that every person is charged with knowledge that any land may be taken by the sovereign for public purposes at any time. However, it would not not necessarily follow that a landowner may voluntarily and without at least some substantial prospect that some public authority will exercise the power of eminent domain convey or dedicate his property for a use, public or private, which would violate his covenants.
There is not present in this case a circumstance of the defendant being confronted with the imminence of condemnation proceedings to acquire the portion of the lot involved for a public street or road. On the contrary, the motives for her actions were primarily for her private benefit and that of the adjoining subdivision in which she held an interest. We do not find that there are circumstances in this case which would interfere with the right of the plaintiffs to seek and obtain recognition and enforcement of the covenant involved. The injunctive relief granted appears to have been appropriate under the circumstances to *34 bring about a discontinuance of the violation of the covenants and to assure that the land would not be put to the prohibited use in the future.
Accordingly the trial court is
Affirmed.
ALLEN, C.J., and LILES, J., concur.