932 So.2d 251 (2005)
AT & T WIRELESS SERVICES OF FLORIDA, INC., a Florida corporation, and City of Coral Springs, a municipal corporation, Appellants,
v.
WCI COMMUNITIES, INC., Appellee.
Nos. 4D04-3285, 4D04-3286.
District Court of Appeal of Florida, Fourth District.
September 7, 2005.
*253 David P. Ackerman and Michael A. Weeks of Ackerman, Link & Sartory, P.A., West Palm Beach, for appellant AT & T Wireless Services of Florida, Inc.
Kerry L. Ezrol and Michael D. Cirullo, Jr., of Goren, Cherof, Doody & Ezrol, P.A., Fort Lauderdale, and John J. Hearn of Office of the City Attorney, Coral Springs, for appellant City of Coral Springs.
James C. Brady of James C. Brady & Associates, Fort Lauderdale, for appellee.
SHAHOOD, J.
We affirm the final judgment ordering the demolition and removal of a telecommunications tower from Sherwood Forest Park and permanently enjoining appellants from maintaining a tower on that property.

FACTS
On April 19, 2002, appellee, WCI Communities, Inc. (WCI), sought injunctive relief against appellants, AT & T Wireless Services of Florida, Inc. (ATT) and the City of Coral Springs (the City), to prohibit the violation of a deed restriction relative to certain lands deeded to the City.
In 1975, Florida National Properties, Inc., conveyed, by Warranty Deed, certain property to the City, including the subject "Sherwood Forest Park." WCI, a major landowner and developer in the City, was the successor-in-interest to the grantor of the Warranty Deed. The Warranty Deed contained the following restriction:
In consideration of this conveyance, by acceptance hereof, the Grantee [City] agrees and understands and assures to Grantor that the above described property would be used and maintained solely for passive park purposes unless the express written consent of Grantor, its successors or assignees, is first obtained.
The property herein conveyed is dedicated to the public for use as passive parks.
SUBJECT to easements, restrictions, covenants, limitations and conditions of record.
(Emphasis added).
In October 1996, the City passed Ordinance 96-137 with the intent to: (1) promote the health, safety and general welfare of the citizens by regulating the siting of telecommunications towers; (2) provide for the appropriate location and development of telecommunications towers and antennas within the city; and (3) minimize adverse visual effects of telecommunication towers and antennas through careful design, siting, landscape screening and innovative camouflaging techniques. The Ordinance allowed freestanding telecommunications towers to be placed in parks and recreation areas greater than five acres. Sherwood Forest Park was listed on the City's list of parks as potential sites for cellular towers.
On July 9, 2001, the City, over WCI's protest, entered into a lease agreement with ATT to install a telecommunications tower in Sherwood Forest Park. The City *254 leased to ATT 1600 square feet of park land for the construction of a "Stealth Tree type tower,[1],[2]" equipment building, black chain-link fencing and associated equipment. WCI protested on the grounds that the City's approval for the construction of the telecommunications tower was in violation of the deed restriction on the park's use. In January 2002, the City processed and approved an application for the issuance of a building permit to ATT to construct an eighty-five (85) foot telecommunications tower, a maintenance building and access ways, supporting structures, and hard-surface areas.
In its complaint, WCI alleged that the use contemplated by ATT and the structure submitted for a building permit was an active commercial use and not a passive use, and thus, the use and construction thereof are violative of the deed restriction. Moreover, neither the City nor ATT requested or received WCI's express written consent for the construction of the tower.
On July 22, 2004, the trial court granted injunctive relief to WCI. In its order, the court set forth the deed restriction governing the park, that the park was conveyed to the City by Warranty Deed and that WCI was the successor-in-interest to the grantor. The court found that both ATT and the City investigated the status of the title of the park prior to entering the lease agreement for the construction of the telecommunications tower, and that they were aware of the applicable deed restriction. "Neither the City, nor AT & T Wireless, made a request to WCI Communities, Inc. for consent to waive the restriction, or to place a communication tower in the park." The court noted that the public was physically excluded from the leased property and that the City was receiving a financial benefit from its commercial venture. The court held that there was no ambiguity in the deed restriction and that the park was to be used for "passive park purposes only." The court held that the use of the park space was a direct violation of the deed restriction, and therefore, impermissible.
In granting injunctive relief, the court found that "it is impractical, and unwise, to order the immediate destruction of the cellular communication tower. That would, no doubt, affect the public negatively. Thus, the injunctive relief provided is modified from that sought by plaintiff." The court ordered that ATT search for, and attempt to acquire or lease an alternate location for a communications tower which would provide suitable coverage to residents and the police, within a 24-month period. The parties were directed to return to the court at least quarterly to report on the status of the matter.

ANALYSIS
We affirm the trial court's findings that the City violated the deed restriction by using the park property for a telecommunications tower and that injunctive relief was warranted.
Deed restrictions on lands are deemed contractual in nature and subject to the same rules of interpretation as are contracts. See generally Hill v. Palm Beach Polo, Inc., 717 So.2d 1080, 1081 (Fla. 4th DCA 1998). The construction of a contract is a question of law for the courts. See Turner Constr. Co. v. Cent. Fla. Equip. Rental, 904 So.2d 474, 475 (Fla. 3d DCA 2005); Land O'Sun Realty *255 Ltd. v. REWJB Gas Inv., 685 So.2d 870, 871 n. 3 (Fla. 3d DCA 1997).
When a contract is clear and unambiguous, the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of the language controls. See Fecteau v. Southeast Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991); see also Jones & Scully, Inc. v. O'Connell, 604 So.2d 867, 868-69 (Fla. 3d DCA 1992), review denied, 618 So.2d 210 (Fla.1993). When a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties. See Fecteau, 585 So.2d at 1007. Although restrictive covenants should be narrowly construed, they should not be construed in a manner that would defeat the plain and obvious purpose and intent of the restriction. See McMillan v. The Oaks of Spring Hill Homeowner's Ass'n, 754 So.2d 160, 162 (Fla. 5th DCA 2000). Restrictive covenants will be enforced where their intent is clear and their restrictions are reasonable. See Imperial Golf Club, Inc. v. Monaco, 752 So.2d 653, 654 (Fla. 2d DCA 2000) (construction of a restroom facility on a golf course violated restrictive covenant requiring complete visibility of golf course).
In this case, the trial court properly concluded that there was no ambiguity in the deed restriction requiring that the property be "used and maintained solely for passive park purposes" and that the "property herein conveyed is dedicated to the public for use as passive parks." The court held that "[t]he park was to be used for passive park purposes only. Fractional use was not specified. Presently, a fraction of the park is not being used for passive purposes."
Here, the actual issue turns not on whether the telecommunications tower's use was passive, as argued by appellants, but whether the use was consistent with the deed restriction that limits use "solely" to "passive park purposes." "In construing restrictive covenants the question is primarily one of intention and the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by a fair interpretation of the entire text of the covenant." White v. Metro. Dade County, 563 So.2d 117, 123 (Fla. 3d DCA 1990) (quoting Thompson v. Squibb, 183 So.2d 30, 32 (Fla. 2d DCA 1966)). Courts have unfailingly guarded against encroachments on public park land where such park land is under the protection of a deed restriction or restrictive covenant. See id.
In this case, quite simply, the use of the park for the telecommunications tower is not related to or in furtherance of "solely for passive park purposes." A telecommunications tower does not support a park use. While appellants argue that the tower supports a park use, like utilities or restrooms, because someone at the park could make a cell call from the park, the tower has no park use. See, e.g., White, 563 So.2d at 124 (the operation of the Lipton tournament violated the deed restriction "public park purposes only" because it deprived the public of the use and enjoyment of the park, including the tennis facilities, during the tournament for an extended period of time).
The City devoted a portion of deed-restricted park lands to a private commercial enterprise and as a result restricted access of park lands from the public's use. While courts have consistently ruled that commercial benefit does not defeat a park purpose, the telecommunications tower has no park purpose. See id. ATT's use of the park property is neither passive, nor is *256 it used to support the park. The lands are being used to fill in ATT's telecommunications grid for monetary gain.
Next, we reject appellants' claim that injunctive relief is not available for a "de minimis" violation. They claim that the impact of the "tree tower" on the passive recreational use of the park was minimal and that WCI was unaffected by the use. Appellants rely upon Thompson which held that property restricted to use for residential purposes, so long as it is in good faith used for such, may also be used to a minor extent for the transaction of some classes of business or other pursuits so long as such is merely casual or unobtrusive and results in no appreciable damage to neighboring property. 183 So.2d at 32. However, such use must be reasonably incidental to residential uses and such an inconsequential breach of the covenant as to be in substantial harmony with the purpose of the parties in making the covenants. See id. at 32.
A minor violation of the deed restriction is still a violation of the deed restriction. "The scope of an easement is defined by what is granted, not by what is excluded, and all rights not granted are retained by the grantor." City of Orlando v. MSD-Mattie, L.L.C., 895 So.2d 1127, 1130 (Fla. 5th DCA 2005). "The scope of an express easement for a stated purpose cannot be expanded to include any use merely because such use does not impose an added burden on the servient estate." Id. In this case, while the impact of the tower to the neighborhood is minimal, the telecommunications tower is not reasonably incidental to "passive park purposes."
Accordingly, we hold that the trial court did not err in granting permanent injunctive relief. See St. Lucie County v. St. Lucie Village, 603 So.2d 1289, 1292 (Fla. 4th DCA), review denied, 613 So.2d 12 (Fla.1992) (a party seeking injunctive relief in Florida must demonstrate: (1) irreparable harm; (2) a clear legal right; (3) an inadequate remedy; and (4) consideration of the public interest); White, 563 So.2d at 126 (an injunction is a proper remedy for violation of a restrictive covenant).
WCI, as the successor-in-interest to the grantor of the Warranty Deed, not only had a continuing interest in the property and a clear legal right to enforce the deed restriction, but appellants violated that deed restriction without obtaining WCI's express written consent.
Further, we reject appellants' claim that the trial court found that the public interest would not be served by granting the relief sought. Although the trial court held that the immediate destruction of the cellular telecommunications tower "would, no doubt, affect the public negatively," that does not support appellants' claim. The order granting the injunction clearly stated that the public was physically excluded from the leased property. This exclusion cut off access to park property to the very members of the public for whose benefit the park was given. This exclusion was inconsistent with the deed restriction. Further, the public interest was served by the maintenance of WCI's common plan for development. While appellants characterize the telecommunications tower as a de minimis violation, it was nevertheless a violation of which they were aware and which they ignored. The public interest is best served by the maintenance of the parks, as dedicated and restricted, particularly where there is a common plan served by the parks.
Appellants further argued that the public interest would be harmed if the injunction were entered where the telecommunications tower served the public interest by providing safety to its citizens through the reception of 911 calls made *257 from the area. Appellant cannot negate the property and legal rights of others based on a decision regarding public safety. See generally Daniel v. May, 143 So.2d 536, 537 (Fla. 2d DCA 1962) (a mandatory injunction to remove structures in violation of restrictive covenants may be granted without taking into consideration the relative amount of inconvenience or injury to be suffered by the parties). Here, the City circumscribed the location of telecommunications towers to City park lands and presented ATT with Sherwood Forest Park as the only candidate site. Clearly, public safety was not the City's most paramount concern as evidenced by its removal of phone service previously available to park users due to the low revenue it generated.
Lastly, we reject appellants' claim that the injunction improperly requires the trial court's continuing on-going supervision. The trial court did not contemplate assumption of day-to-day management responsibility for the use of the telecommunications tower. Rather, in an effort to balance the competing interests and ensure fairness to all involved, the court properly ordered the removal to take place over time, allowing ATT and the City to relocate the necessary cellular telecommunications tower. The two-year transition period was intended to allow for the removal of the tower in a manner that minimizes potential harm to the parties and the public.
As to all other issues, we affirm without comment.
Affirmed.
STEVENSON, C.J., and GROSS, J., concur.
NOTES
[1] The City required ATT to construct the "stealth tree tower" in the form of a pine tree to blend in with the park's aesthetics.
[2] ATT paid the City a one-time payment of $10,000 to be used at the park and pays annual rent in the amount of $24,000.