922 So.2d 229 (2005)
CLEAR CHANNEL METROPLEX, INC.; Clear Channel Broadcasting Licenses, Inc.; and GFS Corporation, Appellants/Cross-Appellees,
v.
SUNBEAM TELEVISION CORPORATION, Appellee/Cross-Appellant.
Nos. 3D04-1834, 3D04-1750, 3D04-2476.
District Court of Appeal of Florida, Third District.
December 28, 2005.
Rehearing and Rehearing Denied March 17, 2006.
*230 Shubin & Bass and Jeffrey S. Bass, Miami; Duke, Mullin and Galloway and Amy Galloway, Fort Lauderdale, and Salvatore H. Fasulo, for appellants/cross-appellees.
Colson Hicks Eidson and Joseph M. Matthews, Coral Gables; Milledge & Iden and Allan Milledge, Miramar, for appellee/cross-appellant.
Before COPE, C.J., and GREEN, J., and SCHWARTZ, Senior Judge.
Rehearing and Rehearing En Banc Denied March 17, 2006.
SCHWARTZ, Senior Judge.
This appeal concerns an oblong peninsula extending in a north-south direction into Biscayne Bay on the north side of the east-west 79th Street Causeway in North Bay Village. For more than forty years, the eastern half of the property has been owned by the appellants Clear Channel Metroplex, Inc., and Clear Channel Broadcasting Licenses, Inc. [collectively "Clear Channel"], and its predecessors, which until 1995 was the location of radio station WIOD.[1] The appellee Sunbeam Television Corporation owns the western half of the property, the site of a TV station, WSVN.
In 2002, Clear Channel reached a tentative agreement with GFS Corporation to sell its "radio" half for the construction of a condominium project. Sunbeam, however, objected to the proposed use of Clear Channel's property and brought the present action for a declaratory judgment against Clear Channel, in which GFS intervened, claiming that the project was forbidden by two provisions of an agreement entered into in 1962, when both stations were in active operation there, concerning the shared use of the entire parcel. Specifically, Sunbeam claimed:
(1) Under paragraph 4, Clear Channel (or, for that matter, Sunbeam itself) could not use any part of the area for anything but "broadcasting purposes." That provision states:
The parties hereto ... agree not to impose any restrictions discriminating in the use of said facilities except as such restrictions shall be reasonably necessary to the continued proper use of said *231 facilities for their present purposes and any such restrictions shall apply uniformly to the Officers, employees, business invitees and visitors of both the television and radio broadcasting facilities[;]
and that
(2) Under paragraph 5 of the agreement, neither party could construct any building on what was roughly the southern half of the parcel without the prior consent of the other which, in this case, Sunbeam refused to give. That provision states:
the parties agree that no further buildings, drives, parking areas or other improvements will be made on the southerly 314.25 feet of the property without the joint consent of the parties; except that Biscayne may install a sidewalk . . . without the necessity of obtaining the consent of Sunbeam.
Sunbeam also claimed the right to an irrevocable license over Clear Channel's half of the property to use a parking lot and helicopter pad, which had been constructed on Clear Channel's property, for so long as Sunbeam owned and broadcasted from a television station on its half.
In the final judgment now before us, rendered after a non-jury trial, the court found in favor of Sunbeam as to both arguments concerning the restrictions on the use of Clear Channel's property, holding that (1) "paragraph 4 of the Biscayne Agreement imposes a valid use restriction on both parcels, limiting them to either broadcast uses or uses reasonably necessary to their continued broadcast uses"; and (2) paragraph 5 remains a valid prohibition on improvements to the southern portion of the property without joint consent of the parties. On Clear Channel and GFS Corporation's appeal from those determinations, we agree that the first is erroneous, but affirm as to the second. We also affirm the court's ruling on Sunbeam's cross-appeal concerning its application for an irrevocable license.

I.
We find little difficulty in concluding that the trial court's determination that the paragraph 4 restriction on the use of the property to "broadcast purposes" is erroneously in conflict with the basic rule that a trial court cannot vary the terms of a written agreement to achieve what it may believe is a desirable result. See Home Dev. Co. of St. Petersburg, Inc. v. Bursani, 178 So.2d 113 (Fla.1965); AT & T Wireless Servs. of Fla., Inc. v. WCI Cmtys., Inc., ___ So.2d ___, 2005 WL 2140234 (Fla. 4th DCA Nos. 4D04-3285 & 4D04-3286, opinion filed, Sept. 7, 2005)[30 Fla. L. Weekly D2130]; Hurtado v. Spanish Broad. Sys. of Del., Inc., 904 So.2d 459 (Fla. 3d DCA 2005); Nat'l Health Labs. Inc. v. Bailmar, Inc., 444 So.2d 1078 (Fla. 3d DCA 1984), review denied, 453 So.2d 43 (Fla.1984). Paragraph 4 seems to us to be simply and solely a mutual non-aggression pact between the parties not to employ the facilities, see Aramark Unif. & Career Apparel, Inc. v. Easton, 894 So.2d 20, 27 (Fla.2004)("`Facility' is defined as `something that is built, installed, or established to serve a particular purpose.'"), they each maintain on the property to interfere with or discriminate against the other.[2] (There is no evidence that the proposed condominium *232 use would violate such an understanding.) There is simply nothing which even refers to "broadcasting," much less imposes a limitation upon the parties' use of their own property to that endeavor. It is of course clear that any restriction on one's use of her property must be very strictly construed. See Washingtonian Apartment Hotel v. Schneider, 75 So.2d 907 (Fla.1954); Moore v. Stevens, 90 Fla. 879, 106 So. 901 (1925); WCI Cmtys., Inc., ___ So.2d at ___, 2005 WL 2140234; Shields v. Andros Isle Prop. Owners Ass'n, Inc., 872 So.2d 1003, 1006 (Fla. 4th DCA 2004). Particularly with, but even without, considering this rule of construction [sic], the trial court's limitation on the use of the property cannot stand.

II.
We reach a different result as to the declaration that paragraph 5 of the agreement is valid, extant and enforceable. The appellants essentially do not, as they could not, claim that the agreement is unclear or invalid on its face. See Sinclair Ref. Co. v. Watson, 65 So.2d 732, 733 (Fla. 1953), cert. denied, 346 U.S. 872, 74 S.Ct. 121, 98 L.Ed. 381 (1953); Publix Super Markets, Inc. v. Wilder Corp. of Del., 876 So.2d 652 (Fla. 2d DCA 2004), review denied, 892 So.2d 1015 (Fla.2004); Cottrell v. Miskove, 605 So.2d 572, 573 (Fla. 2d DCA 1992); Norwood-Norland Homeowners' Ass'n v. Dade County, 511 So.2d 1009 (Fla. 3d DCA 1987), review denied, 520 So.2d 585 (Fla.1988). They seem to contend, however, that Sunbeam has waived the right to rely on the provision because it constructed a jointly-used parking lot and other facilities in the southern "no build zone" during the years after 1962. Because, among other things, the record shows that in each such instance Sunbeam secured the consent of Clear Channel as the agreement provides, we cannot agree, in accordance with the classic definition of waiver as "the voluntary and intentional relinquishment of a known right," Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707, 711 (Fla.2005), that Sunbeam has waived its own right to insist upon its agreement with Clear Channel's proposal. See Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263, 265 (1945); Miracle Ctr. Assocs. v. Scandinavian Health Spa, Inc., 889 So.2d 877, 879 (Fla. 3d DCA 2004), review denied, 914 So.2d 954 (Fla.2005); Woodlands Civic Ass'n, Inc. v. David W. Darrow, D.C., P.A., 765 So.2d 874, 877 (Fla. 5th DCA 2000); Mizell v. Deal, 654 So.2d 659, 663 (Fla. 5th DCA 1995); State v. Belien, 379 So.2d 446, 447 (Fla. 3d DCA 1980).
Especially considering the rule that waiver is ordinarily an issue for the finder of fact, see Rutig v. Lake Jem Land Co., 155 Fla. 420, 20 So.2d 497, 499 (1945); Anthony v. Gary J. Rotella & Assocs., P.A., 906 So.2d 1205, 1208 (Fla. 4th DCA 2005); Popular Bank of Fla. v. R.C. Asesores Financieros, C.A., 797 So.2d 614, 619 (Fla. 3d DCA 2001); Dumor Avionics, Inc. v. Hangar One, Inc., 319 So.2d 95, 97 (Fla. 3d DCA 1975), we approve the court's resolution of this issue below.[3]

*233 III.
Finally, we reject the contention on cross-appeal that Sunbeam had established a right to an irrevocable license. See Dance v. Tatum, 629 So.2d 127 (Fla.1993); Seaboard Air Line Ry. Co. v. Dorsey, 111 Fla. 22, 149 So. 759 (1932); Albrecht v. Drake Lumber Co., 67 Fla. 310, 65 So. 98 (1914), receded from on other grounds by Dance v. Tatum, 629 So.2d 127 (Fla.1993); Brevard County v. Blasky, 875 So.2d 6 (Fla. 5th DCA 2004), review denied, 889 So.2d 71 (Fla.2004).
Affirmed in part, reversed in part.
COPE, C.J., concurs.
GREEN, J. (dissenting in part, concurring in part).
Although it professes not to, I believe that the majority opinion has in fact wrongfully rewritten the parties' agreement by finding that paragraph 4 does not provide a use restriction on the property. Accordingly, I dissent from that section of the opinion.
Paragraph 4 of the 1962 agreement prohibits any restriction on the use of the property unless "reasonably necessary to the continued proper use of said facilities for their present purposes[.]" (Emphasis added). This restrictive covenant, as are all restrictive covenants, is clothed with a presumption of validity. See Cottrell v. Miskove, 605 So.2d 572, 573 (Fla. 2d DCA 1992)("Restrictions are clothed with a very strong presumption of validity because each property owner has adequate notice of the restrictions and purchases his property knowing of, accepting, and relying upon them."). As such, these covenants should not be invalidated unless they are clearly ambiguous, arbitrary, unreasonable, or violative of public policy or a fundamental constitutional right. Constellation Condo. Ass'n, Inc. v. Harrington, 467 So.2d 378, 379 (Fla. 2d DCA 1985). Moreover, where, as here, the terms of the covenant are unambiguous, courts will, and should, enforce the restriction according to the intent of the parties as expressed by the ordinary meaning of its terms. Norwood-Norland Homeowners' Assn., Inc. v. Dade County, 511 So.2d 1009, 1014 (Fla. 3d DCA 1987).
In this case, it is uncontroverted that prior to the 1962 agreement, the property in question was solely owned by Biscayne Television Corporation ("Biscayne"), which operated both a television and radio station on the property. In 1962, the Federal Communications Commission took the television station license from Biscayne and gave it to Sunbeam. Cox Broadcasting, an affiliate of Biscayne and Clear Channel's predecessor, assumed ownership of the radio station and its portion of the property. By virtue of the 1962 agreement, Sunbeam bought the television station building and the real estate on which it was situated. The opening of the agreement provides:
WHEREAS, because of the location of the various buildings, driveways, antennas and other facilities composing said Radio Station and Television Station upon said property, it is essential that the parties reach an agreement as to the *234 joint use, operation and maintenance of said real property and the improvements and facilities located thereon.
(Emphasis added). Historically, and by the agreement's own terms, in 1962, the purpose of the property was clearly to run and house both a radio station and a television station.
Therefore, the present purpose referred to in paragraph 4 could clearly be nothing other than the running and housing of both a television station and a radio station.
Accordingly, I believe that pursuant to the expressed intent of the parties to the 1962 agreement, we must affirm the trial court's determination that paragraph 4 restricts the use of the property to "broadcast purposes" only. To do otherwise is to impermissibly do that which the majority accuses the trial court of erroneously doing: varying the terms of the written agreement to achieve its desired result. As the case law cited by the majority illustrates, rewriting the parties' agreement is violative of Florida caselaw. I, therefore, respectfully dissent to that portion of the majority's opinion.
NOTES
[1] WIOD continues to transmit its radio signal from towers on the property, but has moved its studios to Miramar, Florida.
[2] It should be noted that such an understanding was particularly appropriate in light of the fact that Clear Channel was simultaneously granted an easement to maintain an antenna on Sunbeam's half of the property. In addition, the agreement also acknowledged that the electrical power transformer vault was located in the Clear Channel building and provided that Clear Channel would not interfere with the power supply to Sunbeam's property.
[3] We do not understand the appellants to have contended below, or to argue directly here, that Sunbeam's refusal to consent to the condominium constitutes a breach of the duty to exercise good faith in the performance of a contractual provision like the one here requiring mutual consent. See Publix Super Markets, Inc. v. Wilder Corp. of Del., 876 So.2d 652 (Fla. 2d DCA 2004), review denied, 892 So.2d 1015 (Fla.2004); Fernandez v. Vazquez, 397 So.2d 1171 (Fla. 3d DCA 1981). To the extent that it has not foregone this contention, we could not interfere with any conclusion that no bad faith has been demonstrated. See Berges v. Infinity Ins. Co., 896 So.2d 665, 680 (Fla.2004)(bad faith is issue of fact); Quirch v. Coro, 842 So.2d 184 (Fla. 3d DCA 2003)(same); Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1097-98 (Fla. 1st DCA 1999)(same), review denied, 744 So.2d 453 (Fla.1999); Fernandez, 397 So.2d at 1174 (same); Whitman v. Pet Inc., 335 So.2d 577 (Fla. 3d DCA 1976)(same), cert. dismissed, 348 So.2d 951 (Fla.1977). These observations do not preclude a subsequent request for Sunbeam to consent to a Clear Channel request for construction on its part of the "no build zone." Our holding concerning the permitted use of the property may or may not be pertinent to the reasonableness of such a request or the arbitrariness of its possible refusal.