ON MOTION FOR REHEARING
 

 LEVINE, J.
 

 We deny appellees’ motions for rehearing, but withdraw our prior opinion and substitute the following in its place.
 

 The issue presented for our review is whether the trial court erred in upholding a development order issued by the Palm Beach County Commission permitting mining in the Everglades. The trial court interpreted the relevant land use policy in the comprehensive plan as non-exclusive, thereby permitting mining in an area zoned for agriculture for a purpose that was not enumerated in the land use policy. We find the trial court erred by failing to define “only” as restrictive and thereby failing to limit mining to the purposes enumerated in the future land use element policy. We reverse.
 

 The Palm Beach County Commission issued a development order to Bergeron Sand and Rock Mine Aggregates, Inc., granting the corporation the right to mine within the “Everglades Agricultural Area” in western Palm Beach County. Bergeron sought to expand its mining operations on property designated as “agricultural production” in the comprehensive plan. After a public hearing, the Palm Beach County Commission unanimously granted conditional approval for the development order and subsequently adopted Bergeron’s application, finding the mining proposal to be consistent with the comprehensive plan.
 

 After the order issued, appellants filed a complaint for declaratory and injunctive
 
 *1125
 
 relief to challenge the development order, claiming that the order was inconsistent with a Future Land Use Element (“FLUE”) policy of the comprehensive plan. The specific FLUE policy, 2.3-e.3, states that “[m]ining and excavation activities, as applicable, shall be restricted” as follows:
 

 Within the Agricultural Production Future Land Use designation, mining may be permitted only to support public roadway projects or agricultural activities or water management projects associated with ecosystem restoration, regional water supply or flood protection, on sites identified by the South Florida Water Management District or the U.S. Army Corps of engineers where such uses provide viable alternate technologies for water management.
 

 Both at the public hearing and later at trial, the parties admitted that aggregate mined from the property designated as agricultural production within the Everglades Agricultural Area could be used for purposes other than to “support public roadway projects.”
 
 [1]
 
 The county submitted to the trial court a staff analysis which stated that “limestone aggregate from the subject property will be marketed to FDOT for road building and construction.” The staff analysis further recommended that Bergeron be required to report annually regarding the amount of material mined and that Bergeron be required to provide “[djocumentation as to the intended use of the material” and whether the usage of the material “complies with the County requirements, such as but not limited to the quarry’s status with FDOT and other usages for the mined aggregate.” When the county commission approved the application, it adopted the staff recommendation that Bergeron submit such an annual report documenting compliance with the comprehensive plan.
 

 Appellants argued at trial that Bergeron intended to sell the aggregate mined from the property on the open market. Lonnie Bergeron, in his deposition, conceded that he had no control over whether the material excavated would, in fact, be used for the construction of public highways. Appellants argued that the sale of the excavated material on the open markets without any controls, runs afoul of the comprehensive plan. Because any development order issued by a local government “shall be consistent” with the comprehensive plan, appellants sought to have the development order quashed. § 163.3194(l)(a), Fla. Stat.
 

 The trial court entered a final summary judgment concluding that the proposed mining was proper since “some portion of the material produced by the proposed mine will be FDOT certified material that will be used in road projects.” The court concluded that the use of some material by FDOT was sufficient to “support” public road construction. This appeal ensues from the trial court’s granting of a final summary judgment on behalf of the county and Bergeron.
 

 We review de novo an order on a motion for summary judgment.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.
 
 Id.
 

 The trial court need not defer to the county’s interpretation of the comprehen
 
 *1126
 
 sive plan.
 
 Pinecrest Lakes, Inc. v. Shidel,
 
 795 So.2d 191, 197-98 (Fla. 4th DCA 2001). The parties have agreed that the order permitting Bergeron’s conditional use of the agricultural property in the Everglades is a development order.
 
 [2]
 
 The parties have further agreed that the sole issue on appeal is whether the development order, authorizing Bergeron’s mining of the “agricultural production” area in the Everglades Agricultural Area, is consistent with FLUE policy 2.3-e.3, which states that mining may be permitted “only to support” public roadways, agricultural activities, or water management projects.
 

 In order to determine if the development order is consistent with the policy of the comprehensive plan, we have to look at the plain language of the policy. We apply the same rules of construction to a comprehensive plan that we would apply to other statutes.
 
 Rinker Materials Corp. v. City of N. Miami,
 
 286 So.2d 552, 553 (Fla.1973). If the terms of the comprehensive plan are not defined, then the language of the plan “should usually be given its plain and ordinary meaning.”
 
 Fla. Birth-Related, Neurological Injury Comp. Ass’n v. Fla. Div. of Admin. Hearings,
 
 686 So.2d 1349, 1354 (Fla.1997).
 
 [3]
 
 The plain and ordinary meaning of “only” has been explained as “[s]olely; merely; for no other purpose; at no other time; in no otherwise; along; of or by itself; without anything more; exclusive; nothing else or more.”
 
 Black’s Law Dictionary
 
 982 (5th ed. 1979). “It is appropriate to refer to dictionary definitions when construing statutes or rules.”
 
 Barco v. Sch. Bd. of Pinellas Cnty.,
 
 975 So.2d 1116, 1122 (Fla.2008).
 

 The Florida Supreme Court has determined in a case involving restrictive covenants on real property that “only” can mean “solely” and “nothing else.”
 
 Moore v. Stevens,
 
 90 Fla. 879, 106 So. 901, 904 (1925). In
 
 Moore,
 
 the Florida Supreme Court found that the covenant, “to be used for residence purposes only,” meant that the residence can be used solely for one type of occupancy.
 
 Id.
 
 “The word ‘only’ is a limiting term which qualifies the word with which it is grammatically connected.... It qualifies the phrase ‘to be used,’ with like effect as if the covenant had read that the property ‘is to be used only for residence purposes.’ ”
 
 Id.
 

 As recognized in other Florida cases, “the word ‘only’ is synonymous with the word ‘solely’ and is the equivalent of the phrase ‘and nothing else.’ ”
 
 White v. Metro. Dade County,
 
 563 So.2d 117, 124 (Fla. 3d DCA 1990) (quoting
 
 Thompson v. Squibb,
 
 183 So.2d 30, 32 (Fla. 2d DCA 1966)). In the present case, the word “only” limits mining in the Everglades Agricultural Area to the three enumerated activities: public roadway projects, agricultural activities, and water management projects.
 

 We are persuaded that mining is permitted “only” to support the restricted and exclusive list of activities outlined in the FLUE within the comprehensive plan.
 
 [4]
 
 
 *1127
 
 As aptly stated by another court, “[o]nly means only.”
 
 Union Station Assocs., LLC v. Puget Sound Energy, Inc.,
 
 238 F.Supp.2d 1218, 1225 (W.D.Wash.2002);
 
 accord Nicklos Drilling Co. v. Cowart,
 
 907 F.2d 1552, 1554 (5th Cir.1990).
 

 The plain language of the text is controlling. “A text should not be construed strictly, and it should not be construed leniently; it should be construed reasonably, to contain all that it fairly means.” Scalia,
 
 supra,
 
 at 23. At oral argument, the county argued that the language requiring mined aggregate to be used “only to support” public roadway projects would conceivably allow mining where only one percent of aggregate is used for public roads (or another enumerated use). We find that particular interpretation of the text in the FLUE policy of the comprehensive plan to be unreasonable in light of the plain language of the text. It would undercut the plain language, as well as the spirit, of the comprehensive plan if only one percent of the aggregate would need to go to public roads while the other ninety-nine percent could go to non-enumerated activities. This construct of the comprehensive plan would eviscerate the clear restrictions outlined in the text, denoted by the word “only.”
 

 We find the plain language controlling, but we also point to the canons of construction for further support. One rule of construction, for example, is “expressio un-ius est exclusio alterius” or “to express or include one thing implies the exclusion of the other.”
 
 Black’s Law Dictionary
 
 (9th ed. 2009). This maxim supports the argument that the comprehensive plan lists a restrictive and exclusive list of three activities, which excludes other activities by virtue of the fact they were not included in the enumerated list. Thus, if the FLUE policy permitted mining in the Everglades Agricultural Area to support private building construction, policy 2.3-e.3 would explicitly reference private building construction. Because private construction is not listed in the policy, we assume it is not permissible by the fact that it is not enumerated or listed.
 

 Further, “[a]s a fundamental rule of statutory interpretation, ‘courts should avoid readings that would render part of a statute meaningless.’”
 
 Unruh v. State,
 
 669 So.2d 242, 245 (Fla.1996) (citation omitted). If we accepted the trial court’s interpretation, then the word “only” would be superfluous, since “mining may be permitted ... to support” public roadways, agricultural activities, or water management projects. The removal of the word “only” would make the list of activities non-exclusive since mining would only be required to “support” the enumerated activities.
 

 In summary, we find the development order permitting mining in the agricultural production area of the Everglades Agricultural Area is inconsistent with FLUE policy 2.3-e.3 of the comprehensive plan. As Justice Oliver Wendell Holmes concluded over one hundred years ago, “[wjhatever the consequences, we must accept the plain meaning of plain words.”
 
 United States v. Brown,
 
 206 U.S. 240, 244, 42 Ct.Cl. 534, 27 S.Ct. 620, 51 L.Ed. 1046 (1907). Therefore, we reverse the judg
 
 *1128
 
 ment in favor of appellees and remand with instructions for the trial court to declare the development order inconsistent with the comprehensive plan and to enjoin enforcement of the order.
 

 Reversed and remanded with instructions.
 

 WARNER and CONNER, JJ., concur.
 

 [1]
 

 . On appeal, the parties' briefs and oral argument focused on public roadway projects. To the extent that the parties raised other claims of compliance with FLUE police 2.3-e.3 below but did not fully address such claims on appeal, those claims have essentially been abandoned.
 
 See, e.g., Johnson
 
 v.
 
 State,
 
 795 So.2d 82, 89-90 (Fla. 5th DCA 2000) (finding an issue abandoned where, even if briefs could be construed as raising the issue, the argument was not developed).
 

 [2]
 

 .A "development order” is defined as an "order granting, denying, or granting with conditions an application for a development permit.” § 163.3164(7), Fla. Stat. (2008). A "development permit” constitutes "any other official action of local government having the effect of permitting the development of land,” such as rezoning, special exception, or variance. § 163.3164(8), Fla. Stat. (2008).
 

 [3]
 

 . As Justice Scalia commented, "Words do have a limited range of meaning, and no interpretation that goes beyond that range is permissible.” Antonin Scalia,
 
 Common-Law Courts in a Civil-Law System: Th.e Role of United States Federal Courts in Interpreting the Constitution & Laws,
 
 in
 
 A Matter of Interpretation: Federal Courts & the Law
 
 24 (Amy Gut-mann ed. 1997).
 

 [4]
 

 . Appellees contend that their interpretation
 
 *1127
 
 of FLUE policy 2.3-e.3 requires only that the mining must "support” road building. The trial court adopted this position by finding that as long as some of the aggregate was used to "support” public road construction then the development order was consistent with the comprehensive plan. We reject this position which elevates the word “support” to the detriment of the word "only.”